# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **EDWARD JAMES EGAN SR.,** ) | |
|    Plaintiff ) | Civil Action No.: 7:05cv00280 |
| v. ) | |
| ) | |
| **GERALD R. HOLT, et al.,** ) | **REPORT AND RECOMMENDATION** |
|    Defendants ) | By: Pamela Meade Sargent |
| ) | United States Magistrate Judge |

Plaintiff, Edward James Egan Sr., ("Egan"), an inmate formerly held at the Roanoke County Jail in Roanoke, Virginia, ("the Roanoke Jail"), filed this action for monetary damages and other relief under 42 U.S.C. § 1983 against the Roanoke Sheriff, Gerald R. Holt, and two medical doctors whom he alleges failed to provide adequate medical care to him while he was an inmate at the Roanoke Jail. Jurisdiction over this matter is based upon 28 U.S.C. §§ 1331 and 1343. This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing and to make a recommendation as to whether the plaintiff has exhausted his administrative remedies.

The undersigned held an evidentiary hearing in this case on October 6, 2005. Egan appeared at this hearing pro se by videoconference from the Sussex I State Prison, where he is currently incarcerated. The defendants were not present, but they were represented by counsel. Egan testified at the hearing, and both parties were allowed time subsequent to the hearing to file any additional evidence they wished for the court to consider on the issue. Based on the evidence presented, the undersigned finds that Egan exhausted his "available" administrative remedies prior to filing this

case. Therefore, the undersigned recommends that the court deny the Defendants' Motion To Dismiss, ("Motion") (Docket Item No. 12).[1]

## *I. Facts*

The evidence before the court shows that Egan was an inmate at the Roanoke Jail from July 2003 until some time in 2005. Egan alleges that, soon after his incarceration at the Roanoke Jail, he began bleeding from his rectum. He further alleges that despite daily requests for medical treatment, he received no treatment for this condition until some time in 2004. Egan also alleges that, some time in late 2003, he contracted scabies, a skin disease, while incarcerated at the Roanoke Jail. He further alleges that despite repeated requests for treatment, this condition was never properly treated. Finally, Egan alleges that he suffered a spider bite while incarcerated at the Roanoke Jail in the summer of 2004 and that this spider bite was never properly treated.

The defendants have tendered two affidavits in support of the Motion. Captain Barry Tayloe provided an affidavit stating that he was the Corrections Administrator of the Roanoke Jail. According to Tayloe, Exhibit 1 to his affidavit is a document entitled "SOP 4.29," which is purportedly a copy of the inmate grievance procedure in effect at the Roanoke Jail at the time of Egan's incarceration there. Also according to Tayloe, Exhibit 2 to his affidavit is a copy of the inmate handbook that was in effect

---

[1]The Motion was entitled a motion to dismiss, although an affidavit from Sheriff Holt was attached to the Motion. Therefore, the Motion, typically, should be treated as a motion for summary judgment and disposed of as provided in Rule 56. *See* FED. R. CIV. P. RULE 12(b).

at the time of Egan's incarceration.  A review of Exhibits 1 and 2 shows that Exhibit 1 nowhere on its face indicates that it is "SOP 4.29," instead Exhibit 1 appears to be an exact photocopy of pages 45 to 48 of Exhibit 2.  Exhibit 2 on its face states that it is the "Rules And Regulations For The Administration Of The Roanoke County/Salem Jail Facility." It also states on its face that it was "Revised May 2005."

Pages 45 to 48 of Exhibit 2 set forth an inmate grievance procedure. According to this procedure, an inmate who wishes to file a grievance should submit a "blue request slip requesting to file a grievance to the Administrative Lieutenant."  The Administrative Lieutenant will then discuss the problem with the inmate and, if the problem cannot be resolved, the Administrative Lieutenant will give the inmate an "informal grievance form."[2] While the procedure does not explicitly state so, it appears that the procedure assumes that the inmate will complete the form and return it to the Administrative Lieutenant because the procedure gives the Administrative Lieutenant three business days to respond. If the inmate is not satisfied with the response, the inmate then must send the completed informal grievance form to the Inmate Advisory Committee, ("the Committee").  The Committee then makes a recommendation to the Jail Administrator, who must advise the inmate of the Committee's recommendation and his decision within three days.  The procedure establishes no time deadlines by which the inmate must file his blue request slip requesting to file a grievance, his informal grievance form or his appeal to the Committee.

---

[2]The procedure makes no mention of any other grievance form other than the "informal grievance form."

If the inmate is dissatisfied with the Jail Administrator's response, the inmate must file an appeal for the Chief Deputy's review with 72 hours. The Chief Deputy must respond to the inmate within seven business days. If the inmate is not satisfied with the Chief Deputy's response, the inmate must file an appeal within 72 hours for "Independent Review." An "Independent Reviewer" must respond to the inmate and the Chief Deputy within 30 calendar days. It does not appear that the procedure offers any instructions regarding what an inmate should do if he receives no response within the required time.

According to Tayloe, Roanoke Jail personnel provide each inmate with a copy of the inmate handbook, which includes a description of the inmate grievance procedure, at the time of the inmate's arrival at the jail, and each inmate signs a receipt showing that he received a copy of the handbook. According to Tayloe, Exhibit 3 is a copy of a Roanoke County Jail Orientation form showing that Egan received a copy of the inmate handbook at the time of his arrival at the Roanoke Jail on July 2, 2003. Since Egan arrived at the Roanoke Jail in July 2003, he obviously could not have received a copy of Exhibit 2 as revised in May 2005. I also note that the receipt, on its face, states that, in the handbook in effect at that time, the inmate grievance procedure was addressed at pages 32 to 34. Again the inmate grievance procedure in Exhibit 2 is contained in pages 45 to 48.

Tayloe also has stated that he has reviewed Egan's file and that there is no record that Egan ever submitted a grievance or requested a grievance form for the issues pertaining to this case or any other issue. Sheriff Holt also has submitted an affidavit stating that he has reviewed Egan's records and that Egan did not file any

grievances during his incarceration at the Roanoke Jail.

Egan testified that when he became incarcerated at the Roanoke Jail, he was not informed of any grievance policy and did not receive a copy of any grievance policy. Egan conceded, however, that he later learned of the policy by talking with other inmates. Egan also conceded that he did not file an informal grievance form with regard to the issues in this case. Egan testified, however, that he completed numerous blue request slips requesting to receive informal grievance forms so that he could file a grievance over these and other issues. Egan stated that he only received one informal grievance form while incarcerated at the Roanoke Jail. Egan stated that he filled out that form in November 2003 complaining regarding his medical treatment. Egan stated that the lieutenant in charge of the medical department later came to his cell and told Egan not to bother him with any grievances and crumpled up the form and threw it down on the floor. Egan stated that he never received any other response to this grievance and never received a copy of this form for his records. The defendants have offered no evidence to dispute Egan's claim that his was unable to employ the inmate grievance procedure.

## II. Analysis

The Prison Litigation Reform Act, ("PLRA"), Pub. L. No 104-134, amended 42 U.S.C. § 1997e making it mandatory that a prison inmate exhaust his administrative remedies before filing a civil rights suit based on prison conditions. This section states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a) (West 2003). This court previously has held that the exhaustion requirement of the PLRA applies to inmates seeking monetary damages, although such damages are not available through a prison grievance system. *See Osbourne v. Deeds*, Civil Action No. 7:99cv00774 (January 24, 2001). The United States Supreme Court also has addressed this issue, holding that under the PLRA, a particular remedy need not be available through the prison's administrative process in order for the PLRA exhaustion requirement to apply. *See Booth v. Churner*, 532 U.S. 731 (2001).

Nonetheless, the PLRA requires only that an inmate must exhaust all "available" administrative remedies. 42 U.S.C.A. § 1997e(a). That being the case, when prison officials prevent an inmate from access to or use of a prison's inmate grievance system, an inmate's failure to exhaust is excused because he had no "available" administrative remedy. *See Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) ("a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)"); *Feliciano v. Goord*, 1998 WL 436358 at *2 (S.D. N.Y. 1998) (dismissal not appropriate where prison officials denied inmate's request for grievance forms and assured him that complaint was not a "grievance matter); *see also Langford v. Couch*, 50 F. Supp. 2d 544, 547 (E.D. Va. 1999) ("available" defined as "accessible," "within one's reach").

In this case, Egan admits that he did not file an informal grievance form regarding the claims raised in his Complaint. Egan also testified, however, that he was prevented from filing because his repeated requests for these forms were denied by Roanoke Jail officials. Egan also testified that he did complete the one informal grievance form he was given, only to have a Roanoke Jail officer crumple it before his eyes, throw it to the floor and instruct Egan not to bother him with any further grievances.

The Fourth Circuit has held that an inmate's failure to exhaust administrative remedies is an affirmative defense that must be raised and pled by the defendants. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). While I am not sure that the documentary evidence provided to the court by the defendants actually establishes the terms of the administrative remedies system in place at the Roanoke Jail at the time at issue, Egan, himself, has admitted that there was such a system in place and that he did not utilize that system with regard to the claims raised in his Complaint. Despite ample opportunity, however, the defendants have produced no evidence to dispute Egan's claims that he was prevented from utilizing the administrative remedies system by Roanoke Jail officials. That being the case, I find that the uncontradicted evidence establishes that, due to the actions of Roanoke Jail officials, any administrative remedies systems in place at that time was not "available" to Egan.

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

As supplemented by the above summary and analysis, the undersigned now

submits the following formal findings, conclusions and recommendations:

1. Egan did not file an informal grievance form regarding the claims raised in his Complaint;
2. Egan was prevented from utilizing the Roanoke Jail's administrative remedies system by Roanoke Jail officials;
3. Therefore, Egan exhausted all available administrative remedies prior to filing this action.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court find that Egan exhausted all available administrative remedies prior to filing this action and, therefore, recommend dening the Motion.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or

recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen E. Conrad, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    This 8th day of November 2005.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE